# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JIM BURGUNDER**, | CIVIL ACTION NO. 17-1295 |
| Plaintiff, | JUDGE ARTHUR SCHWAB |
| v. | |
| **UNITED SPECIALTY INSURANCE COMPANY**, | |
| Defendant. | |

## **MEMORANDUM OPINION**

**I.  Introduction**

Jim Burgunder ("Plaintiff") initiated this action on September 1, 2017, against United Specialty Insurance Company ("Defendant') for breach of contract and for bad faith in violation of Pennsylvania's bad faith statute, 42 PA. CON. STAT. ANN. § 8371.  Plaintiff had sought payment under his insurance policy after two buildings on his property sustained damage but was denied.  Currently pending before the Court is Defendant's Motion for Summary Judgment, its brief in support thereof, and its concise statement of material facts.  (Docs. 37, 38, 39.)  Plaintiff filed a response thereto along with a counterstatement of material facts.  (Doc. 44, 45, 46.) Summary judgment was denied by order on May 1, 2018.  This is the memorandum opinion relating to that decision.

**II.  Facts**

Plaintiff is the owner of 116 New York Avenue in Rochester, Pennsylvania.  (Docs. 39 ¶ 5; 46 ¶ 5 8.)  Plaintiff purchased a Commercial Lines Policy from Defendant that provided coverage for two buildings on his property from June 3, 2016, until June 3, 2017.  (Docs. 39 ¶ 9; 46 ¶ 9.)  The amount of Property Damage Coverage available for Building 1 and Building 2 is

$300,000 and $50,000, respectively.  (Docs. 39 ¶ 20; 46 ¶ 20.)  On April 1, 2017, retaining walls on a neighboring property failed.  (Docs. 39 ¶ 7; 46 ¶ 7.)  Both buildings were damaged and were subsequently condemned and demolished.  (Docs. 39 ¶ 8; 46 ¶ 8.)

Plaintiff reported his loss to Defendant, and Daniel Green was assigned as the claims representative.  (Docs. 39 ¶ 21; 40-4 at 33.)  On April 6, 2017, per Defendant's request, Erik Swanson of VeriClaim, an independent adjusting firm, inspected the property and was unable to discover who owned the retaining walls that failed.  (Docs. 39 ¶¶ 24, 25, 27; 46 ¶¶ 24, 25, 27.)  His report, however, did mention that the walls at issue were likely not part of Plaintiff's property based on an "Indenture to Deed".  (Doc. 40-8, 3.)  With Green's permission, Swanson, retained an engineer to further evaluate the loss.  (Docs. 39 ¶ 29; 46 ¶ 29.)

Green then sent a Partial Denial of Coverage and Reservation of Rights letter to Plaintiff.  (Docs. 39 ¶ 30; 44 ¶ 30.)  Robert L. Smith, P.E., Defendant's expert, authored a report outlining his investigation and conclusions.  (Docs. 39 ¶ 33; 44 ¶ 33.)  Smith found that the retaining walls were not designed properly, were not constructed in accordance with acceptable standards, and were not properly maintained.  (Docs. 39 ¶ 34; 46 ¶ 34.)  On May 8, 2017, after receiving the engineering expert's conclusion, Mr. Green denied coverage based upon Mr. Smith's conclusion that the loss was caused by the lateral forces of the earth coupled with the walls' inadequate design, construction, and maintenance.  (Docs. 39 ¶ 35; 46 ¶ 35.)  Mr. Green's opinion was based solely on his expert's conclusion and he did not consult counsel and was unaware of Pennsylvania law.  (Docs. 40-4 at 49, 56, 57; 46 ¶¶ 40-41.)

On April 2, 2018, Plaintiff's expert Richard A. Bragg, Ph.D., P.E., authored a report.  (Docs. 39 ¶ 36; 46 ¶ 36.)  In his report, Bragg concurred with Defendant's engineer that the retaining walls that failed were not properly designed, constructed, or maintained and that design

and construction flaws were the cause of its failure. (Docs. 39 ¶ 37; 46 ¶ 37.) Bragg concluded that the walls' failures were not the result of a landslide and did not induce a landslide. (Doc. No. 46 ¶ 42; 47 at 7.) Dr. Bragg also concluded that:

> [a)] Failure of the retaining walls was the direct cause of damage to the 1-story structure located on the Burgunder property. The southwest corner of this building was founded on fill that was located within the zone of plastic equilibrium in the fill retained by the walls. Collapse of the walls resulted in simultaneous collapse of support for the southwest corner of the building foundation provided by the fill retained by the wall.
> [b)] The failure of the walls was initiated by the structural collapse of the brick retaining wall located below the timber retaining wall. The lower brick wall was inadequately designed/constructed to retain soil fill to near its top (a height of about 12 feet). Nonetheless, the timber wall placed additional lateral loading on the brick wall and contributed to its ultimate collapse.
> [c) T]he two buildings located on the Burgunder property were condemned at the same time and that the failure of the retaining walls was the primary consideration for the condemnations.

(Doc. No. 46 ¶ 43.)

### III. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for the Aged, 659 F.3d 282, 290 (3d Cir. 2011) (internal citations omitted).

3

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record—i.e., depositions, documents, affidavits, stipulations, or other materials—or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) the non-moving party cannot produce admissible evidence to support its fact(s). FED. R. CIV. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "[T]he nonmoving party bears the ultimate burden of proof" for the claim in question. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). FED. R. CIV. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). In reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 237-38 (3d Cir. 2007) (citing Anderson, 477 U.S. at 255).

**IV.    Discussion**

Both parties agree in this diversity action that Pennsylvania law applies.

**A. Count I-Breach of Contract**

Defendant asserts three reasons why Plaintiff's loss is not covered under the USIC Policy: the earth movement exclusion, the maintenance exclusion, and the fact that collapses are only covered in limited situations under the policy. Defendant's arguments are without merit and, as such, Defendant's Motion for Summary Judgment as to Count I, breach of contract, has been denied.

"To prevail on a contract claim under Pennsylvania law, a plaintiff must show '(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages.'" Reeves v. Travelers Cos., --F. Supp. 3d --, 2017 WL 4930900, at *2 (E.D. Pa. Oct. 31, 2017) (quoting Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)). Under Pennsylvania law, the "'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the Court.'" Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008) (citing Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (2007)).

"Since [an insurance] policy is a contract, the court's duty is to ascertain the intent of the parties as manifested in the language of the agreement." E. Associated Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3d Cir. 1980). "A policy must be read as a whole and its meaning construed according to its plain language." Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 163 (3d Cir. 2011). A policy should be interpreted to "give effect to all of its provisions." Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 321 (3d Cir. 2011) (internal citation and quotation omitted). "[I]f the court is 'forced to choose between two competing interpretations of an

insurance policy, we are bound, as a matter of law, to choose the interpretation which allows us to give effect to all of the policy's language.'" Gen. Refactories Co. v. First State Ins. Co., 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015) (quoting Clarke v. MMG Ins. Co., 100 A.3d 271, 276 (Pa. Super. 2014)).

"Whether an ambiguity exists is a question of law." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 419 (3d Cir. 2011) (internal citation and quotation omitted). "The court should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits[,]" and should not torture the language of the policy to create an ambiguity. E. Associated Coal Corp., 632 F.2d at 1075. An insurance contract is ambiguous where it: "(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning." Lawson v. Fortis Ins. Co., 301 F.3d 159, 163 (3d Cir. 2002).

Where policy language is clear and unambiguous, the court is required to enforce that language. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (3d Cir. 1983)). Importantly, when the policy language is ambiguous, however, it must be construed against the insurer, and in favor of the insured, and any reasonable interpretation offered by the insured must control. Am, Auto. Ins. Co. v. Murray, 658 F.3d 311, 321 (3d Cir. 2011). This is because "'insurance contracts are not freely negotiated agreements entered into by parties of equal status.'" Lomma v. Ohio Nat'l Life Assurance Corp., 283 F. Supp. 3d 240, 249-50 (M.D. Pa. Sept. 6, 2017) (quoting Reliance Ins. Co. v. Moessner, 121 F.3d 895, 905 (3d Cir. 1997)).

While the insured has the initial burden of establishing coverage, once coverage is established, the insurer must prove an exclusion applies. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001). "Where an insurer relies on a policy exclusion as the basis for

6

its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3d Cir. 2006) (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). Exclusions are construed strictly against the insurer and in favor of the insured. Nationwide Mut. Ins. Co., 258 F.3d at 206-07.

"[I]n an action based upon an 'all risks' insurance policy, the burden is upon the insured to show that a loss has occurred; thereafter, the burden is on the insurer to defend by showing that the loss falls within a specific policy exclusion." Betz v. Erie Ins. Exch., 957 A.2d 1244, 1256 (Pa. Super. 2008) (internal citation and quotation omitted).

### 1. Earth movement exclusion

Defendant argues that there is no coverage in this case due to the USIC Policy's earth movement exclusion. The exclusion provides:

> **A. Covered Causes of Loss**
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.
>
> **B. Exclusions**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . . .
>    **b. Earth Movement** . . .
>    (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.
>
>    But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion. . . .

7

> This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

"'[E]arth movement exclusions in insurance policies generally refer to and have historically related to catastrophic and extraordinary calamities such as earthquakes and landslides.'" Matson–Forester v. Allstate Ins. Co., No. 1:12–cv–01838, 2014 WL 580267, at *4 (M.D. Pa. Feb 12, 2014) (quoting Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co., 833 F.2d 32, 35 (3d Cir. 1987)); STEVEN PLITT ET AL., § 153:69. SETTLING, SHRINKING, AND EXPANSION, 11 Couch on Ins. § 153:69 (Dec. 2017) (explaining "when the scope of the settling exclusion is not otherwise defined or placed in sections regarding 'wear and tear,' settling, shrinking, and expansion is commonly limited to normal, naturally occurring events"). As such, "the earth movement exclusion of an insurance policy was 'meant to deny coverage for spontaneous, natural, catastrophic earth movement, and not movements brought about by other causes.'" T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 294 (M.D. Pa. 2006) (quoting Peters Twp. Sch. Dist., 833 F.2d at 35. However, Plaintiff's policy does not contain a typical earth movement exclusion in that it contains the following additional provision: "This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused."

Defendant summarily states that subsection **(4)** of the earth movement exclusion excludes from coverage the type of injury that Plaintiff sustained here. The section excludes from coverage losses or damages stemming from "Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface."

8

Defendant seems to suggest that any earth movement falls within this exception. However, to read **(4)** as broadly as Defendant suggests would not only read out the second sentence of the subsection but it would also render subsections **(1)**, **(2)**, and **(3)** superfluous. Subsections **(1)**, **(2)**, and **(3)** of the earth movement exclusion specifically preclude from coverage damage to Plaintiff's property caused by earthquakes, landslides, and mine subsidence, respectively. It bears mentioning that the case that Defendant cites as analogues to the instant matter has a very different earth movement exclusion. Gillin v. Universal Underwriters Ins. Co., Civil Act. No. 09-5855, 2011 WL 780744 (E.D. Pa. Mar. 4, 2011). Accordingly, based on Defendant's arguments, summary judgment as to the earth movement exclusion is denied.

    **2.**    **Maintenance Exclusion and Ensuing Loss Exception**

Defendant also argues that there is no coverage in this case due to the USIC Policy's maintenance exclusion, which provides:

> 3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if any excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. . . .
>
>     **c.**    Faulty, inadequate or defective:
>
>     **(1)**    Planning, zoning, development, surveying, siting;
>     **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>     **(3)**    Materials used in repair, construction, renovation or remodeling or;
>     **(4)**    Maintenance;
> of part or all of any property on or off the described premises.

This provision is an exclusion but it also contains an exception to the exclusion, an ensuing loss provision, that if any excluded cause of loss that is listed in **3.a.** through **3.c.** results in Covered Cause of Loss, Defendant will pay for the loss or damage caused by the Covered Cause of Loss. The ensuing loss provision limits the applicability of the maintenance exclusion

9

to only those damages that naturally and foreseeably arose from the exclusion. Ridgewood Grp., LLC v. Millers Capital Ins. Co., No. 1138 EDA2016, 2017 WL 781620, at *5 (Pa. Sup. Feb. 28, 2017). Thus, if the loss was foreseeable due to defective design, construction, or maintenance, then the loss is excluded from coverage; if, however, the loss was not foreseeable, then there is coverage. Id. Typically, however, the duty imposed by the maintenance exclusion is one that is due under the policy. Dougherty v. Allstate Prop. & Cas. Ins. Co., 185 F.Supp.3d 585, 597 (E.D. Pa. 2016).

It is undisputed that the retaining walls were not properly designed, constructed, or maintained, and it is also undisputed that the walls did not belong to Plaintiff but rather belonged to the neighboring property. This Court has been unable to identify any Pennsylvania cases and Defendant has failed to identify any Pennsylvania cases which extend the maintenance exclusion to preclude coverage where the defect that caused damage to Plaintiff's property was not located on Plaintiff's property. Indeed, the majority opinion in Steele v. Statesman Insurance Co. did not even address the maintenance exclusion when faced with a similar factual scenario. 607 A.2d 742 (Pa. 1992). Even if a duty existed based on the language "of part or all of any property on or off the described premises," summary judgment still could not be granted because there is a material question of fact as to whether Plaintiff's injury was foreseeable due to the defective design, construction, or maintenance of the retaining walls.

### 3. "Abrupt Collapse"

Defendant also argues that there is no coverage in this case due to the USIC Policy's additional coverage-collapse provision, which provides:

> **D. Additional Coverage - Collapse**
> The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

10

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
   a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
   b. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
   c. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.
   d. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:
   (1) A cause of loss listed in **2.a.** or **2.b.**;
   (2) One or more of the "specified causes of loss";
   (3) Breakage of building glass;
   (4) Weight of people or personal property; or
   (5) Weight of rain that collects on a roof.

Additional Coverages are exceptions to exclusions or cover things that are not already covered under the policy. Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co., Civ. Act. No. 1:07–CV–1756, 2010 WL 5071190, at *3 (M.D. Pa. Dec. 7. 2010); Young Sook Pak v. Alea London Ltd., Civ. No. 1:08–CV–0824, 2009 WL 2366549, at *8-9 (M.D. Pa. July 30, 2009). The policy at issue is an all-risks policy, given that fact there is coverage unless Defendant can point to an exclusion, which Defendant has failed to do. Instead of pointing to an exclusion, Defendant has pointed to an exception to an exclusion. Thus, Defendant's motion for summary judgment as to this Count is without merit.

**B.     Count II - Bad Faith**

Defendant argues Count II should also be dismissed because: (1) there is no insurance coverage under the USIC Policy and, as a result, there can be no bad faith, and (2) Defendant denied coverage only after a proper investigation.

"[A]n insurer must act with utmost good faith towards its insured." Berg v. Nationwide Mut. Ins. Co.,-- A.3d --, 2018 WL 1705274 (Pa. Super. Apr. 9, 2018). Pennsylvania's bad faith statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CON. STAT. ANN. § 8371. Bad faith is defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.1984) (internal citation and quotation omitted). "[M]ere negligence or bad judgment is not bad faith." Id. (internal citation and quotation omitted).

"[T]he party 'seeking to prove a bad faith claim must establish by clear and convincing evidence that the insurance company acted in bad faith without a reasonable basis for denying the claim, and that it knowingly or recklessly disregarded its lack of a reasonable basis to do so.'" Reeves v. Travelers Cos., ---F. Supp. 3d ---, 2017 WL 4930900, at *4 (E.D. Pa. Oct. 31, 2017) (quoting Lockhart v. State Farm Mut. Auto. Ins. Co., 410 F. App'x 484, 485-86 (3d Cir. 2011)). Plaintiff must prove the following two elements to establish that Defendant acted in bad faith: (1) that Defendant "did not have a reasonable basis for denying benefits under the policy";

12

and (2) Defendant "knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir.2005). Thus, summary judgment is appropriate on a bad faith claim where, "'there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" Whalen v. State Farm Fire & Cas. Co., 183 F. Supp. 3d 672, 679 (E.D. Pa. 2016) (quoting Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

An insurance company acts with a reasonable basis for denying coverage where the insurance company "conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Turner v. State Farm Fire & Cas. Co., 260 F. Supp. 3d 419, 425 (M.D. Pa. 2017). Similarly, "bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." Sayles v. Allstate Ins. Co., 260 F. Supp. 3d 427, 448 (M.D. Pa. 2017). However, "[b]ad faith may occur 'when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue.'" Hamm v. Allstate Prop. & Cas. Ins. Co., 908 F. Supp. 2d 656, 671 (W.D. Pa. 2012) (internal citation and quotation omitted).

Because coverage may be available under the USIC Policy, Defendant's first argument as to bad faith, *i.e.*, that there can be no bad faith because there was no coverage, is without merit. Defendant's second argument is that it did not act in bad faith because it properly investigated the claim and relied on its expert. Plaintiff responded that it was not the investigation that was the problem but the legal knowledge base of the decision-maker. Reading the evidence in the light most favorable to Plaintiff, there is a material question of fact as to whether Defendant's interpretation of the policy was reasonable given that Green, Defendant's decision-maker, was

13

unfamiliar with Pennsylvania law and did not consult legal counsel. Therefore, summary judgment as to this Count was denied.

**V.     Conclusion**

Based upon the foregoing, Defendant's Motion for Summary Judgement was denied.

Date:   May 10, 2018

                                               **BY THE COURT:**

                                    */s/* Arthur J. Schwab
                                    Arthur J. Schwab
                                    United States District Judge